Good morning and may it please the court, my name is Todd Shearer on behalf of the appellants in this case. There's several John Doe's as well as a Jane Doe who's the next friend of John Doe number six. We obviously have submitted extensive briefs. This is a case that involves a lot of sort of dense factual material, but to get to the point which I think was raised by the court's letter to the parties last week, I think this case exemplifies the wooden application of a statute of limitations without any independent or any analysis of the actual claims raised and the injuries that were inflicted as a result of those constitutional claims. Judge Goldberg Let me ask you a question. So I looked at the operative complaint and the relief that you're seeking in the operative complaint is going forward relief, right? You're seeking an injunction going forward and a declaratory judgment going forward. Are you suing over anything that's happened in the past at all? Todd Shearer No, the relief sought is an injunction from the registration provisions in the statute. So this is similar to what I think the Conkley and the Flinn case talk about and some other cases as well in terms of when you're looking at situations that allege a continuing violations doctrine or the application of the continuing violations doctrine. We're not asking for any monetary damages or any other damages for things that have already happened. We are, and this is of course part of the ex post facto claim, we are asking for relief from future adherence or from future enforcement I should say. Judge Goldberg So that raises a question for me and that is, you said at the start something about it being a kind of, it should be a claim specific analysis. I agree with that. We have the majority opinion which may control at least our resolution of some of these claims and I think we've also had decisions about lethal injection protocols for example where the protocol had been in place for a while and the request for equitable relief, prospective relief, injunctive relief to stop an execution where the protocol had been in place for a longer period than the statute of limitations. We said the limitations period had run so it can apply to prospective relief. I think our precedents say that, but there's a quality to the arguments that I want to make sure we disentangle, sort out, understand and that is you've in one sense had an argument about it's the cumulative impact of all of this, but on the other hand, as you said this morning, there's a claim specific analysis and there's one claim in particular that it seemed to me the claim about going from five days to three days, totally new, within the statute of limitations, burdens your client in a new way, in the very simple way of going from Are you asking us in that substantive due process claim to analyze it just that provision? Or is it, or does your claim depend on it interacting with a lot of other provisions that have been on the books for a long time? Well I think the substantive due process claim is a stand alone claim, but what's also important about for example, the 2018 changes with the definition of a temporary residence, when you look at that change in connection with some of the prior amendments, for example, the definitions of some of the terms that are used, it creates a vagueness problem. So that's the underlying basis of the vagueness claim and of course, all of them combined Yeah, I guess I was thinking mainly of the right to travel substantive due process claim. I mean, I'm open to hearing about any particular claims that you think are particularly your strongest argument. It did seem like the ones you're saying are vague, that those definitions have been in place for a long time. Well they have been, but when they're imposed on an even more restrictive definition of a temporary residence, for example, having 48 hours to do something when you have a period of five days or 14 days is a whole lot different than when you have a period of three days. So for example, if you're taking a trip that you want to last for three days and you have a 48 hour reporting requirement, when does that, when does the day start? First of all, what is the first day? Let's say you're checking into a hotel on a Friday evening at 10 PM. Is that Friday the first day or is Saturday the first day? And of course, what's overarching is that these people are at pain of arrest and possible imprisonment for violation, for even an inadvertent violation of one of these provisions. And so let's think just about claim for a right to travel, which to me at least appeared to be focused on the five to three day change. Correct. Which was within the limitations period, right? Yes. We should, you're not arguing that your challenge is in that particular subclaim is more than that, are you? No, I mean the claim as it's set forth in the Second Amendment complaint, so it's very clear I think what that claim is. But I think for example, the vagueness claim that you were talking about, for the same reasons as the right to travel claim is within the statute of limitations period, the void for vagueness claim, the procedural due process claim, also the continuing violations doctrine applies to that. Because what Cunley brothers and Flint make very clear is that when you are challenging the facial unconstitutionality of a statute, it's void for vagueness. It continues to be void for vagueness no matter when the enactment or the regulation or whatever it is that was the triggering event for the complaint, whenever that occurred. Let me ask you a question about just a broader concern I have about the case, which is that you are arguing, I think, that these statutes impose continuing obligations on your clients that they have to comply with these statutes going forward into the future under pain of prison forever, right? I mean that is your position. Yes. So why, given that, why does the statute of limitations matter at all? Why doesn't a claim accrue to sue under those, that those obligations that the state is imposing on you are unconstitutional every time that they are applied to you? Well, that was our position. Unfortunately, the district court, you know, when we had the argument on the defendant's motion to dismiss, this court had just issued McGroarty maybe a few weeks before, and I think perhaps it led the court a little bit of a stray to just sort of look at, because the defendant's position was, these people registered decades ago, so their statute of limitations expired decades ago. But footnote six of McGroarty says that McGroarty has not challenged an ongoing obligation to do anything. That's a quote from McGroarty, and so you're challenging the ongoing obligations that are imposed on you, right? Clearly, that's the... So I guess my question is, is this a continuing violation? This is just sort of a legal question to try to frame what's going on here. Is this a situation where there's a continuing violation question under the statute of limitations? Or is this a question where the statute of limitations just doesn't have any effect here because you're not challenging something that happened in the past, you're challenging something that's happening now? Well, I don't disagree with that, and I... Which one is it, I guess? I mean... Well, I think it's certainly, I mean, there may be an argument of the continuing violations doctrine. I mean, the defendant's the one that raised it. But correct, certainly for most of these challenges, there's an ongoing violation every day that passes where they're going to enforce the statute. This wouldn't be true of all the claims, though, would it? So for example, your first claim is that the registry statute violates the ex post facto cause because the offender's qualifying offenses predate the registry statute. Correct. But they've already registered, right? Well, it's not based on their registration. It's based on this sort of accumulation of 20 years of burdens that have pushed it over to be punitive along with new evidence. The requirement that they register, which they've already done, right? Correct. Yes. Where their offense predated the registry statute, the claim about that is barred, isn't it? Correct. I mean, I don't see how that could be timely. No, it's not barred, just like it wasn't barred, for example, in Doe v. Snyder. Because when, you know, in terms of an ex post facto analysis, there's a number of factors, one of which is, is there a point where a statute that perhaps wasn't punitive before But none of your clients are having to register again. But claim one doesn't have anything to do with their requirement to register initially. Well, if it's prospective relief, you want to enjoin the application of the law that would require you to register, which they've already done years ago, based on offenses that predated the registry statute. I don't understand what the prospective relief would be. Well, it's the re-registration, it's the strict liability, it's all of the . . . Isn't there an obligation under the statute that the sex offenders re-register and continue to update their registration? Yes. Okay. And so that's based in the registration statute? Right, but it keeps, those times keep increasing along with all of the other triggering events that require in-person reporting. Change of, if you get a tattoo, if a car is parked in front of your apartment for more than five days, you have to make an in-person report at the pain of prison or arrest. So there's a number of factors that fall into the ex post facto claim, along with unquestionable new empirical data that's been gathered over the course of 20 years, which establishes that these offenders have virtually no risk of re-offense. That's what an ex post facto claim does. It weighs all of those factors. So a prior statute, like in Doe v. Snyder, that may previously have been upheld, needs to be revisited. So that certainly is a prototypical claim, in my view, that cannot be barred. And we submit it is, and finally, all of this argument that we're having, which I appreciate, we submit should have been done by the district court. So we submit that the case should go back for Judge Williams to evaluate properly under Cunley and Flint, each of these claims. I mean, we're here de novo. We've got, don't we, Mr. Chair? We have to look at it ourselves to figure out whether it's right or not. Of course. I understand. And I see my time is up, so I'll reserve my time. Thank you. Mr. Baum. Oh, actually, it may be Baum. Thank you, Your Honors. And may it please the court. Christopher Baum for the Appley. Had plaintiffs brought claims directed against the 2018 amendments, which changed the definition from five days to three days, we would not be here talking about the continuing violation doctrine. Those claims would have been within the statute of limitations, but plaintiffs have always maintained that this is a continuing violations doctrine case. Here's the problem I have with the entire theory of your argument, and so I would like you to address it, is that this is an ex parte young cause of action that's suing an executive officer. The basis of the cause of action is that the executive officer is threatening to apply an unconstitutional law to make an unconstitutional requirement. It seems that you believe that such a cause of action arises when the legislature passes a law, not when an executive officer makes a threat of an unconstitutional action. Why doesn't the cause of action occur when the defendant, the executive officer, threatens to do something unconstitutional and not accrue whenever the legislature passes some law? So why is it? Well, I think the threat may arise as a result of the legislature passing the law. But I think here... No, no, that's incorrect, right? So if the executive branch says, for example, there's this law in the books, but we're not going to enforce it, you don't have a cause of action under ex parte young, right? Yeah. So, I mean, you can have all sorts of laws on the books that do all sorts of unconstitutional things, but unless there's an executive officer who threatens to enforce it, then you don't have a cause of action like this. So why is it that this cause of action, you say, occurs or accrues when some legislation is passed and not when the executive says, if you don't do what we're telling you, we're going to put you in jail? Why is that? Because that's not their claim, your honor. Had they been challenging the 2018 amendments, we wouldn't be here even talking about... No, I'm not talking about the 2018 amendments. I'm talking about anything, right? So I mean, their argument is that, the way I see it, is that, look, we have to continue to do this. We have to register, we have to update our registration, we have to tell you when we leave town for five days or three days, whatever it is, and if you don't do that, you're going to put us in jail. And you didn't put us in jail last year, but you're threatening to put us in jail this year. So I guess my point is, why does the effective date of the legislation create, why is that the accrual date of a cause of action from which the statute of limitations runs, instead of it running from the accrual, whenever the executive is threatening to enforce a law that is arguably unconstitutional? Because I think it turns on whether the threat itself is unconstitutional. And plaintiffs have never argued that, for the versions of the statute outside of the enactment period, that any versions of that statute were unconstitutional. But counsel, just to pick up on what Judge Brasher is asking, let's just assume a statute was passed in 1960, okay? And it's enforced by the state, it's enforced every day by the state, and going forward, you might not have worried that it was going to be enforced because you weren't going to do anything that might possibly be in violation of it. But now, you're thinking of doing something that might possibly be in violation of it. You think it shouldn't be in violation of it, but you don't know. You can't tell because it's vague or because for any number of other reasons. Why wouldn't you have a cause of action for the unconstitutionality of the statute, to challenge the unconstitutionality of the statute, if your concern is that you don't want it to be enforced against you, and the state is enforcing this statute against people in general? Sure. Well, I think the state has been enforcing the statute against plaintiffs in general since they've been on the registry, and they've been aware of its enforcement, and it hasn't been until 2018 that they have said, well, now . . . Yeah, but here's the thing, they're saying, we're not complaining about how it's been applied to us, could have been applied to us in the past. It's that, to take Judge Rosenbaum's point, it could be applied to us now in a new way because I want to do something new next week, and it's a prospective claim. Why can't they just say, going forward, as to that new application that involves me prospectively, I've got a new claim? Well, I think that would be a different case because that would be tied to the 2018 amendments that they say . . . And I'm not challenging how it's applied to me in the past for anything I've ever done in the past, but insofar as that preexisting provision will apply to me next week when I do something I've never done before, I want to challenge it prospectively. I don't read that to be their claim because they've always argued that the versions and provisions enacted outside of the limitations period were constitutional, and they couldn't have argued otherwise because this court's precedents foreclose it because they've upheld those provisions as constitutional. So to the extent that they say, well, now I want to do something that might violate those provisions, and therefore I could be put into jeopardy for that, that's not a constitutional claim, and it's not their argument that the application of those provisions would have been unconstitutional. So because they have never argued . . . You're doing something new going forward, right? I mean, whether or not . . . it could have still violated the statute that was passed in 1960, but you've never done it before. Now you want to do something new going forward, and you're aware that the state is enforcing the statute. And so you can't make the decision to do this new thing. It's not . . . you're not being punished for something that you've done in the past. It's for something that you want to do going forward, and you're saying the statute prevents you from doing it, prevents you from traveling, for example. Why isn't that . . . I mean, why is there a statute of limitations problem at all with that? Because I'm not clear that that's what they are actually asserting. They're not saying, here's this new thing I want to do. The new thing they want to do is violate the law, right? I mean, they're saying, look, we've been complying for this law for years and years and years and years. We don't want to do that anymore. We want to violate the law. That's their new thing, right? And we just don't want it applied to us going forward. And I think in that circumstance, that would mean that there is no statute of limitations against a . . . The problem with that is there is a statute of limitations for everything that's already occurred. So, you're saying based on the conduct rather than on what the prohibition is? Both sides' conduct. What the plaintiff would want to . . . the conduct it would want to . . . he would want to engage in and the conduct of the defendant's application of the statute to him. Well, I think that the application of the statute has always . . . has been there since 1997, and . . . It's new enforcement action. And by new, I don't mean it's like novel and different. I mean, it's enforcement action that hasn't happened to the plaintiff previously, maybe because the plaintiff hasn't done activity that would subject himself to it. But the point is there's new enforcement activity. Why isn't the fact that there's new enforcement activity by the state a reason in and of itself that we don't have a statute of limitations problem? Well, Your Honor, I don't think there is new enforcement activity. I think that . . . Have you stopped enforcing the law? No, Your Honor. Okay. Well, then it's new enforcement activity, right? It's, I mean, every day you wake up and you enforce the law. It's a new day. Right. And under the precedents that Your Honor's pointed us to in the oral argument order, those cases involved a constitutional injury that was occurring and was continuously occurring. Let me see if I can help you with this this way. Let's say tomorrow an individual is convicted of a qualifying sex offense for the first time. The statute has never applied to that individual before that conviction, right? Would that individual be able to challenge every aspect of that statute for prospective relief? I think they would certainly have a much better case and I think that that may be the case that . . . The answer to that is pretty clear, isn't it? And I think that's the case . . . It's not a statute. I mean, if they want to file their suit the day after the registration statute applies to them, they're within the limitations period, aren't they? You wouldn't argue, would you, that they were obliged to challenge the statute before their conviction, would you? That's correct. And I think that's the case that Plaintiff's Counsel have brought in the Northern District of Florida that they referred to in their 28-J letter where they narrowed the case to the 2018 amendments and added a plaintiff that was within the four-year statute. You see how, though, it's about . . . when you're looking at it in terms of prospective relief, how it matters when the statute's going to be enforced against you for your no conviction, the claim can't accrue until the statute applies to them. And then think about that in the sense of the person who doesn't want the statute applied to them in a new way, in a new day going forward, even though they haven't challenged anything about its application for the last 20 years. Well, so that I think goes to the heart of the case, is that they're talking about this new application based on the five days to three days. And that's what they're arguing now. But I urge you to read the district court's transcript on the motion to dismiss hearing where the district court says over and over, is this the claim you want to bring? Do you want to bring this claim based on this new activity that you want to conduct? Do you want to? And do you want to amend that? Is there room for that amendment? And they said, you know, we're interested in amending, but maybe on the vagueness grounds. And not on that. They didn't amend. And you don't have to believe the district court on this. You can take the plaintiff's word for it themselves. Because after their complaint was dismissed, they sought leave to amend and add a proposed third amended complaint where they did limit their claims to the application of this new conduct that they wanted to engage in based on the 2018 amendments going from five days to three days. Let me ask you to address a hypothetical for me. So, let's assume I live in a town where the speed limit is like five miles per hour. And I, like everybody else, I got my driver's license when I was 16 and I've been living in that town for my whole life. I turned 41 today, it's my birthday. So I've been living there for a long time, abiding by that five mile per hour speed limit. And I say, you know what, I just, I just can't take it anymore. This is unconstitutional. The speed limit violates the dormant commerce clause. It violates my like substantive due process rights to drive faster. I'm going to file a lawsuit against the speed limit. Can I not do that because I'm 41? Well, first of all, happy birthday. But I think it would depend on at the motion to dismiss stage, whether you have a facially plausible. Yeah, yeah. I mean, I'm not saying that you don't address the constitutional claim. I'm saying the statute of limitations. I mean, does the statute of limitations for that speed limit challenge run from when I get my driver's license or does it run from when I say, look, I don't want to drive with this. I don't want to follow the speed limit anymore. Tomorrow, I want to go 25 instead of five, right? When does it run? When do I get the claim? I think they may be intertwined because as this court's precedents and the Sixth Circuit and Ninth Circuit case have indicated, you need a facially plausible constitutional injury to continuously reset the statute of limitations period every day such that you have a claim accruing every day. If your claim is not that there's an actual facially plausible. Okay. All right. Well, you don't like my substance of due process claim on the speed limit. Okay. Let's assume that it's big. Let's assume there's one speed limit for black people and another speed limit for white people, right? So that's the speed limit. So I clearly have a facially plausible claim against that. So I wake up one day and I say, you know what, I'm tired of driving the lower speed limit because I'm white and can I file a lawsuit over that? Or is it the statute of limitations run because I'm not, you know, 20. That may be your closer case, Your Honor. How's that? Rosa Parks. Yeah. Rosa Parks. You can't, you can't complain about having to sit in the back of the bus because you're too old. You know, the segregation of bus laws have been on the law books in the city of Montgomery for 20 years, too late. That's your theory? That's your position? Certainly not. Your Honor. I think, I think that our position is closely tied to how plaintiffs have litigated this case in the district court. And it is closely tied to how they have continuously maintained that they're challenging the entire statute and they are not challenging the recent 2018 amendments. And had they done so, we wouldn't be here talking about again. What Rosa is arguing about is a bus segregation law ordinance that has been on the books for a long time. You keep going back to the 2018 amendments. Well, I think that would have been applied to her in that instance. And therefore, because it was applied to her unconstitutionally at that point, she had a claim that arose at that time. But plaintiffs have continuously been subject. The buses had been segregated for many years before, before she filed, before she had a problem, right? So let's assume, you know, that's the situation. Why is that different from this? Because here, plaintiffs have been continuously subject to these requirements. Well, so had Rosa Parks. She had not. I mean, one. Yes, she had. The first time that she had been subject to those requirements, she could have challenged that. No, it was the first time she decided to sit in the whites only section. She said because there were all the seats were taken in the in the black section. That's I mean, you know, just as a matter of history, that's what it was, right? And because she said, I'm tired of this. I want to challenge it now, even though I've never challenged it before. She could do that, right? Absolutely, Your Honor. Why is this different? Because plaintiffs have never argued and could not argue that the previous versions of the statute were actually unconstitutional. They've always said, well, you know, the priest's pre pre versions of the statute enacted outside of limitations. So it depends on the it depends on the merits of the claim as to whether how can that be as I mean, when have we ever decided a statute of limitations decision based on the merits of the claim? Well, I think it's intertwined, Your Honor. And even in the McGroarty case, it was dependent on what what the actual harm and injury was. And there it was that it was a yes, it's based on what they're asking for, but not on whether they will be successful. Well, no, it was based on what the what the actual harm that they were suffering, what the actual injury that they were suffering was, and whether it was a continuing consequence or a continuing injury. So I do think that the this has to be bound up somewhat with the merits, and they have conceded that it's not based on that the previous versions were constitutional. Okay, we've you've gone over at our our insistence, Mr. Sherry, you say share, you've saved three minutes. Thank you. Unless the court has any additional questions, I'll Well, I would like to ask you to address the issue that he raised about the can that you conceded that the previous versions were constitutional and whether that has any impact on the statute of limitations issue. If you look to Kuhnley brothers and Flint, what they both make very clear, I was about to put my mask back on, I'm so used to it, is that an unconstitutional statute that keeps being the enforcement of which keeps being threatened to you isn't insulated by a statute of limitations simply because it wasn't challenged before. And so the argument that we were making is that, yeah, all these prior versions of the statute, they said what they said, but now with the continued enforcement, and certainly in light of the 2018 amendments, that there's no statute of limitations problem, that the law continues to be threatened to be enforced against them, just like it was in Kuhnley brothers and in Flint. There's really no distinction. In fact, in Kuhnley brothers, there were two claims. One was a takings claim, and one was a right to travel claim. And the court said, no, the takings claim is different because the takings claim, the injury occurred that one discrete time when the letter or something went out about prohibiting the use of the trucks on a particular roadway. But the right to travel is a continuing problem. And that's what we have here. There's no claim for damages, right? That's correct. This is only injunctive relief. And so if we go through each of the claims in your complaint and look at them to see when the claim accrued, you'll rest on the idea that I think has been our shared understanding. I don't want to speak for anybody, but I think it has been, that your clients, what they're challenging is only the future application of the various provisions they've challenged, period. That's correct. They're not challenging the fact that your client was once upon a time required to register under statute because that's only, that's already happened. Correct. The registration issues are just updating it, re-registering anything that would happen in the future. Right. They're not challenging their registration. They're not saying they're not sex offenders. None of that is at issue here. Okay. Thank you very much. Thank you.